MOORE *v.* DENSON.

Opinion delivered December 22, 1924.

EXECUTION—ESTATE BY ENTIRETIES.—Real property owned by husband and wife by entireties is subject to sale under execution to satisfy a judgment against the husband, subject, however, to the wife's right of survivorship.

Appeal from Poinsett Circuit Court; *G. E. Keck,* Judge; affirmed.

*Aaron McMullin* and *Gautney & Dudley,* for appellant.

Real property, owned by husband and wife by entire-ties, is not subject to sale under execution to satisfy a judgment against the husband. 23 C. J. 338; 61 Ark. 388; 124 Ark. 390; 144 Ark. 159; 118 Ark. 274; 44 Ark. 458; 29 Ark. 202; 151 Ark. 161; 147 Ark. 7; 154 Ark. 155; 26 Ind. 424, 89 Am. Dec. 471; 68 Ind. 247. See also 42 L. R. A. (N. S.) 555, 84 Atl. 953; 121 A. S. R. (Md.) 578; 102 A. S. R. (Ind) 252; 42 Am. R. (Ind.) 210; 22 A. S. R. 252; 76 Ill. 536; 64 Pa. 39; 30 L. R. A. (Tenn.) 315).

*S. T. Mayo* and *Basil Baker,* for appellees.

It appears that this question has not been directly settled by this court, but, by reason and analogy, we think it has been settled contrary to appellant's contention. C. & M. Digest, § 4270; 74 Ark. 316; 81 Ark. 70; 94 Ark. 296; 54 Ark. 547. *Prima facie* all of a debtor's property is subject to execution, and the burden is on the party claiming it to show that it is exempt. 52 Ark. 547. See also 56 Ark. 139; 54 Ark. 9. A husband or wife may, without the consent of the other, voluntarily sell or alienate his or her interest in an estate held by entirety. 61 Ark. 388, 393, approved by citation in 63 Ark. 289, 301. Neither spouse can deal with an entirety estate in derogation of the other's right of survivorship, and it is clear that the grantee of the spouse who dies first has no right against the survivor; but it is certainly true that the grantee of the surviving spouse would take the entire title to the same effect and extent as it would have been taken by his grantor, vendor or predecessor in title. 66 Ark. 305; 124 Ark. 390; 12 Mass. 478; 7 Am. Dec. 87; *Id.* 76; 20 N. J. Law., 556; 45 Am. Dec. 388. Sales under execution in such cases have been held good. 19 Wis. 362; 88 Am. Dec. 692; 4 Sneed 683; 70 Am. Dec. 269; 120 Atl. 194. Our court has joined with that line of opinions which permit the sale or alienation of the interest by either spouse within the consent or joining of the other, and it is a rule of property here. 13 R. C. L. 1131, § 132; 30 C. J. 572; 30 L. R. A. 324.

SMITH, J. The question involved on this appeal is this: "Is real property, owned by husband and wife by entireties, subject to sale under execution to satisfy a judgment against the husband?"

At § 106 of the chapter on Husband and Wife in 30 C. J., page 572, it is said: "In some jurisdictions it is a rule that the interest of the husband in an estate in entirety during coverture may be reached by his creditors on execution; and the purchaser at the execution sale takes subject to the wife's right of survivorship and to her right to possession, where that right is conferred or protected, either expressly or impliedly, by statute. But the weight of authority is to the effect that, where real property is held as an estate in entirety, the interest of neither spouse is liable for the debts of the other; a conveyance by the husband and wife jointly passes title to the property clear of any claim of creditors of the husband; a judgment against one spouse alone is not, during the joint lives of the tenants of the estate, a lien on the land; and, during coverture, there can be no sale of any part on execution against either."

Cases supporting both the minority and the majority rule are cited in the notes to the text quoted, and, among the cases cited as supporting what is stated to be the minority rule—that the interest of the husband is subject to sale under execution—is our case of *Branch* v. *Polk,* 61 Ark. 388, which is found annotated in 54 Am. St. Rep. 266, and 30 L. R. A. 324.

The question stated as being involved on this appeal was not directly involved in the case of *Branch* v. *Polk, supra,* but the reason given for the decision in that case is decisive of the question involved here.

The facts there were that Polk and his wife were tenants by the entirety of a tract of land, and each executed a mortgage in which the other did not join, conveying to Mrs. Branch an undivided half interest in the land to secure a note due from Mr. Polk to Mrs. Branch. Polk died, the note matured, and Mrs. Branch brought suit to foreclose both mortgages.

The trial court held that neither spouse was seized of any interest which could be conveyed unless the other spouse joined in the execution of the conveyance. Upon the appeal this court held that Mrs. Polk, having survived her husband, became the sole owner of the land, and that her mortgage deed was valid and binding as to the undivided half interest in said lands conveyed by her as security for the note executed by her husband.

It was there stated that, at the common law, the husband had, during marriage, exclusive control of such estates, but that this authority of the husband did not arise from any peculiarity of the estate, but arose out of the rule of the common law that, during coverture, the husband had the control of the estate of his wife, and the court proceeded to consider the question whether, under the law of this State, the wife had the power, during coverture, by a separate deed, to mortgage her interest in lands held by herself and her husband as tenants of the entirety.

After recognizing the conflict in the authorities, Mr. Justice RIDDICK, speaking for the court, said:

"In this State a married woman has full control of her separate property, and may convey and dispose of it as if she were a *feme sole*. Our Constitution and statute have excluded the marital rights of the husband therefrom during the life of the wife; Const. 1874, art. 9, § 7; Sandel & Hill's Digest, § 4945; *Neelly* v. *Lancaster,* 47 Ark. 175; 58 Am. Rep. 752; *Roberts* v. *Wilcoxson,* 36 Ark. 355. We think that the effect of these provisions was to give the wife control of all the property owned by her, including her interest in an estate by the entirety as well as other real estate. To say that it did not apply to an estate by entirety would be to deprive her of a share in the rents and profits of such an estate during the life of her husband, and would establish an exception to the operation of the Constitution and statute resting on no valid principle or reason. *Hiles* v. *Fisher,* 144 N. Y. 306; 43 Am. St. Rep. 766. On the other hand, to say that neither she nor her husband could convey any interest

in such an estate except by a joint deed would tie up the estate, and prevent either of them from controlling or disposing of his or her interest without the consent of the other. It would also result in placing it beyond the reach of the creditors of either of them, and such is the rule followed in several of the States. *McCurdy* v. *Canning,* 64 Pa. St. 39; *Chandler* v. *Cheney,* 37 Ind. 391; *Naylor* v. *Minock,* 96 Mich. 182, 35 Am. St. Rep. 595, and note.

''But it would seem that this rule is, to a certain extent, illogical, for, under it, the effect of the statutes giving married women control of their own property is also in this instance to curtail the power of the husband over his own interest in real estate. The object of these laws was not to affect in any way the control of the husband over his own property. Their sole purpose was to give to the wife what she did not have at common law, the right to control and convey her own property as if she were unmarried. *Mertles* v. *Numan,* 92 N. Y. 152, 44 Am. Rep. 361.

''While such legislation has taken away the control of the husband over the interest of the wife in estates of entireties, as it has removed his control from her other property, yet it does not seem reasonable to hold that it also affected his right to control his own interest in such an estate, or that it exempted such interest from seizure by his creditors. As was said in *Buttlar* v. *Rosenblath,* 42 N. J. Eq. 651, 59 Am. Rep. 52: 'Any device of this character for the protection of the husband's property from his creditors is unknown to the common law, and so contrary to public policy that it ought not to be ingrafted upon our system of laws by interpretation of the statute, unless the intent to do so is clearly expressed.'

''The rational construction of these provisions of our Constitution and statute, which 'unrooted principles of the common law hoary with age,' swept away the marital rights of the husband during the life of the wife, and gave enlarged powers to married women, is, not

that they lessen the power of the husband over his own interest in an estate by entirety, but that they deprive him of the control over the interest of the wife which he formerly exercised *jure uxoris,* and confer upon the wife the control of her own interest. The right of the wife to control and convey her interest, we think, is now equal to the right of the husband over his interest. They each are entitled to one-half of the rents and profits during coverture, with power to each to dispose of or charge his or her interest, subject to the right of survivorship existing in the other. *Hiles* v. *Fisher,* 144 N. Y. 306; 43 Am. St. Rep. 762; *Buttlar* v. *Rosenblath,* 42 N. J. Eq. 651, 59 Am. Rep. 52."

We have quoted extensively from *Branch* v. *Polk* in order that the reasoning of that case may appear, for, as we have said, the legal principles which control the decision of the question here were announced there, although the question arose in a different manner.

We conclude therefore that the reason given for the decision in the case of *Branch* v. *Polk, supra,* is decisive of the question raised here, and that the interest of either spouse is subject to sale on execution, and, this being true, we do not stop to inquire whether this is the better rule or is supported by the greater weight of authority.

The court below held that the husband's estate in the land was subject to execution, and refused to quash an execution which had been levied upon it, and that judgment is affirmed.