T.C. Memo. 1998-52


UNITED STATES TAX COURT


ROBERT E. DUNHAM, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21581-94.                    Filed February 9, 1998.


<u>Montfort S. Ray</u>, for petitioner.

<u>Amy J. Sargent</u>, <u>Lloyd E. Mueller</u>, and <u>Rebecca D. Harris</u>, for

respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  In a notice of deficiency, respondent

determined deficiencies in petitioner Robert E. Dunham's Federal

income and self-employment taxes, additions to tax, and an

accuracy-related penalty as follows:

| | | Additions to Tax | | Penalty |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(f) | Sec. 6654 | Sec. 6662(a) |
| 1989 | $39,942 | --- | --- | $7,988 |
| 1990 | 32,812 | $24,609 | $2,159 | --- |
| 1991 | 34,411 | 25,808 | 1,979 | --- |
| 1992 | 40,963 | 30,722 | 1,786 | --- |

In the Answer, respondent made affirmative allegations seeking additions to tax under section 6651(a)(1)[1] for each of the 4 years in issue. Respondent contends that section 6651(a)(1) should apply alternatively for taxable years 1990, 1991, and 1992, if we decide that section 6651(f) additions to tax do not apply for any of these years. In the Amendment to the Answer, respondent also alleged that section 6662(a) accuracy-related penalties should apply alternatively for 1990, 1991, and 1992 if we decide that section 6651(f) additions to tax do not apply. At trial, respondent moved for a penalty under section 6673.

After concessions, the issues for our consideration are: (1) Whether petitioner is liable for tax on his income from a veterinary practice and other sources for each of the years in issue; (2) whether petitioner is liable for self-employment tax for each of the years in issue; (3) whether petitioner is liable for additional tax under section 72 in 1989 for a premature distribution of $30,000 from an individual retirement account; (4) whether petitioner is liable for additions to tax under

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

either section 6651(a)(1) or section 6651(f), and under section 6654 for the years in issue; and (5) whether a penalty should be awarded under section 6673. Respondent has conceded that petitioner is not liable for section 6662(a) accuracy-related penalties as determined in the notice of deficiency for 1989 and as alleged in the Amendment to the Answer for 1990, 1991, and 1992.

## FINDINGS OF FACT[2]

At the time the petition was filed, petitioner resided in Crossett, Arkansas. During the years in issue, petitioner was a veterinarian in a sole proprietorship doing business as the Crossett Animal Clinic. Petitioner received adjusted gross income from his veterinary practice of $65,000 in each of the years in issue. In 1992, petitioner had a short-term capital gain of $752.50 from the sale of stock. In 1992, petitioner also received interest income of $35 and dividend income of $65. Petitioner failed to report the income from his veterinary practice, the capital gain, or the interest and dividend income, or to pay Federal income taxes on these amounts. In 1989, petitioner received a $30,000 premature distribution from his individual retirement account (IRA).

---

[2] The stipulation of facts and the attached exhibits are incorporated therein by this reference.

Petitioner did not maintain records of his income from his veterinary practice. Petitioner received payments for his veterinary services primarily in cash or by check and did not keep records of these payments. On occasion, petitioner permitted customers to establish a charge account. When the customer paid the account, petitioner destroyed records of the account receivable. Petitioner did not keep records of his expenses from his veterinary practice, such as the costs of medical or laboratory equipment, drugs, or medical supplies. He discarded invoices relating to these expenses.

During the years in issue, petitioner maintained a bank account in connection with his veterinary practice in the name "Crossett Animal Hospital". Petitioner made deposits to this account totaling $507, $8,462, $43,339 and $87,705, in 1989, 1990, 1991, and 1992, respectively. Petitioner was married and had held his personal residence with his wife as tenants by the entirety under Arkansas law. In 1987, petitioner transferred his interest in the residence to his wife for consideration of $1.

During April 1990, petitioner filed an unsigned Form 1040, U.S. Individual Income Tax Return, for 1989. On the unsigned 1989 return, petitioner reported $30,000 in income from the premature IRA distribution. In a letter attached to the return, petitioner stated that he intentionally did not sign the return because signing the return under penalties of perjury, as

provided on the form, would be a waiver of his constitutional rights. Petitioner attached two opinion letters to the return, one from an attorney and the other from an accountant, which advised that by signing a Form 1040, a taxpayer waives constitutional rights or subjects himself to criminal sanctions. Petitioner consulted and received advice from a number of tax professionals, including the two whose letters were enclosed with the 1989 return. The tax professionals each held tax protester beliefs similar to petitioner's. The opinions of tax professionals had been obtained by petitioner from outside of his own area. Petitioner had sought the advice of a local professional who declined involvement with petitioner's tax protest returns.

In 1992, the Internal Revenue Service (IRS) began an examination of petitioner's 1989 tax liability. The audit expanded to include 1990, 1991, and 1992. Petitioner became aware of the audit by October 1992. In April 1993 and November 1994, after he was notified of the audit, petitioner submitted Forms 1040NR, U.S. Nonresident Alien Income Tax Return, for each of the years in issue, including the taxable year 1989 for which petitioner had filed the unsigned Form 1040. On the Forms 1040NR, dated April 12, 1993, petitioner provided his name and signed each of the forms, but he did not list his Social Security number. Petitioner provided his street address and identified

his country as "Arkansas and the States united with it by and under the Constitution of the USA". The Forms 1040NR contained the word "NONE" or character "N/A" in pertinent spaces for income, deductions, taxes owed, and payments. On the return, petitioner reported that he was not a U.S. citizen. As part of the return, petitioner attached a statement to each form that reported that he was "a domiciled inhabitant of an American State" and that his "tax home was within an American Union State". Petitioner reported that he did not receive any gross income effectively connected to a U.S. trade or business. He further reported that he had American earned income of approximately $65,000 which was foreign gross income excludable and exempt from U.S. taxation under section 911(a)(1).

On August 30, 1994, respondent mailed a notice of deficiency to petitioner. Respondent determined that petitioner did not file valid tax returns for each of the years in issue. After he received the notice of deficiency, petitioner submitted a second set of Forms 1040NR for taxable years 1990, 1991, and 1992, dated November 15, 1994. Petitioner provided his name and Social Security number on the forms and signed each of them. As a part of the address, petitioner identified his country as "Arkansas, USA". The second set of Forms 1040NR contained "NONE" or "N/A" in pertinent spaces. On line 23 of the forms, petitioner reported that he received $65,000 in income that was exempt from

tax by treaty. In a statement attached to the forms, petitioner reported that he resided in Arkansas, USA. Petitioner denied that he was a U.S. citizen or a resident of a State subject to U.S. sovereignty. He also denied that he was a nonresident alien engaged in a trade or business within the United States. Petitioner reported that the $65,000 in income that he received was "exempted from U.S. tax imposition pursuant to the United States tax convention of September 17, 1787" (citing U.S. Const. art. I, sec. 2; sec. 894 (Income Affected by Treaty)).

In September 1995, petitioner submitted a fourth set of documents to the IRS for each of the years in issue. The documents were entitled "Statement in Lieu of Return" and reported that petitioner received $65,000 per year in Federal Reserve Notes. Among other declarations, petitioner stated that the Federal Reserve Notes were not income because they were not redeemable in gold or silver and do not constitute payment in U.S. dollars. Petitioner deducted a $65,000 fair market value from the amount of Federal Reserve Notes that he received and calculated "0" income and no tax owed.

The petition in this case does not allege any factual basis that establishes error in respondent's deficiency determination. Instead, the petition, along with other pleadings, contains tax protester arguments. Petitioner did not cooperate with respondent during the preparation of this case. During the audit

of the years in issue, petitioner did not meet with respondent's agents and failed to provide records to respondent in connection with the examination of his tax liability. Petitioner's answers to respondent's discovery were inadequate. In addition, petitioner submitted six discovery requests to respondent that concerned irrelevant tax protester matters that have no meaningful relationship to respondent's determination of petitioner's income tax liability, additions to tax, and penalties. Petitioner maintained tax protester arguments in the documents he submitted to the IRS and in his testimony at trial even though he knew that this Court has held the arguments to be frivolous.

## OPINION

At trial, petitioner conceded that if the Court finds him subject to Federal income tax, he had adjusted gross income from his veterinary practice of $65,000 in each of the years in issue. Petitioner also conceded that he received interest and dividend income and short-term capital gain in 1992. At trial, petitioner expressed various tax protester arguments that are without merit and have often been rejected by this Court. Petitioner did not present any evidence concerning respondent's determination that he is subject to self-employment tax under section 1401 on the $65,000 income from his veterinary practice for each of the years

in issue. Accordingly, petitioner is liable for Federal income and self-employment taxes for each of the years in issue.

Petitioner received a $30,000 premature distribution from his IRA. Section 72(t)(1) imposes a tax of 10 percent of the amount of an early distribution from a qualified retirement account. Section 72(t)(2) provides for certain exceptions to the general rule contained in paragraph (1). Petitioner has not argued that any of the statutory exceptions apply. Accordingly, petitioner is liable for the 10-percent additional tax on the $30,000 early distribution under section 72(t).

For 1989, petitioner filed an unsigned Form 1040. Respondent determined that the form was not a valid return and that petitioner was liable for a section 6651(a) addition to tax for 1989. Section 6651(a)(1) imposes an addition to tax equal to 5 percent of the tax due for each month that a return is delinquent, not to exceed 25 percent. The section 6651(a)(1) addition to tax does not apply if the failure to timely file is due to reasonable cause and not due to willful neglect. Reasonable cause exists if the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file a return within the prescribed time. Crocker v. Commissioner, 92 T.C. 899, 913 (1989); sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Respondent asserted the section 6651(a)(1) addition for

1989 in the Answer and, thus, has the burden of proof on this issue.  Rule 142(a).

An unsigned Form 1040 is not a valid return.  Cupp v. Commissioner, 65 T.C. 68, 78 (1975), affd. without published opinion 559 F.2d 1207 (3d Cir. 1977); Kelly v. Commissioner, T.C. Memo. 1987-352, affd. without published opinion 858 F.2d 743 (11th Cir. 1988).  Petitioner's failure to file a valid tax return for 1989 was not due to reasonable cause.  Rather, petitioner enclosed a letter with the return that stated he intentionally did not sign his return based on tax protester arguments.  Moreover, petitioner admitted that he knew these arguments have been repeatedly rejected by this Court as frivolous.  Accordingly, petitioner is liable for a section 6651(a)(1) addition to tax for 1989.

Respondent determined that petitioner also failed to file returns for 1990, 1991, and 1992 and that for these years the failure to file was fraudulent.  Where a taxpayer's failure to file a return is fraudulent, the addition to tax is equal to 15 percent of the tax due for each month that the return is delinquent, up to a maximum of 75 percent.  Sec. 6651(f)(1) and (2).  Petitioner contends that the two sets of Forms 1040NR and the "Statements in Lieu of Return" constitute valid tax returns for purposes of section 6651.

We first consider whether any of the documents submitted by petitioner constitute valid tax returns under section 6651.  If not, we then consider whether petitioner's failure to file a return in 1990, 1991, and 1992 was fraudulent.  The two sets of Forms 1040NR were not submitted to the IRS until April 1993 and November 1994, respectively, and the "Statements in Lieu of Return" were not submitted until September 1995.  Accordingly, none of these documents were filed in time to prevent the imposition of the maximum addition to tax under section 6651(a)(1) or section 6651(f) for the taxable years 1990 and 1991.  We find that petitioner failed to file returns for 1990 and 1991.

Petitioner filed one of the Forms 1040NR for 1992 on April 12, 1993; that form would have been timely filed if it constituted a valid return.  Accordingly, we must address whether the nonresident alien form is a valid tax return.  Petitioner argues that the Form 1040NR, U.S. Nonresident Alien Income Tax Return, is a valid tax return for purposes of section 6651 because it accurately reported his income from his veterinary practice as $65,000.  Petitioner argues that respondent has conceded that petitioner accurately reported the amount of his income on the form by stipulating that petitioner had annual adjusted gross income from his veterinary practice of $65,000.

Section 6011(a) requires taxpayers to file a return or statement according to the forms and regulations prescribed by the Secretary.  The Supreme Court has on a number of occasions considered the essential elements of a valid tax return, usually for purposes of the statute of limitations.  Badaracco v. Commissioner, 464 U.S. 386 (1984); Commissioner v. Lane-Wells Co., 321 U.S. 219 (1944); Zellerbach Paper Co. v. Helvering, 293 U.S. 172 (1934); Florsheim Bros. Drygoods Co. v. United States, 280 U.S. 453 (1930).  The essential elements of a valid return, developed from Supreme Court precedent, are set forth in Beard v. Commissioner, 82 T.C. 766, 777 (1984), affd. 793 F.2d 139 (6th Cir. 1986) as follows:

> First, there must be sufficient data to calculate tax liability; second, the document must purport to be a return; third, there must be an honest and reasonable attempt to satisfy the requirements of the tax law; and fourth, the taxpayer must execute the return under penalties of perjury.  [Id. at 777.]

In this case, the question of whether the Form 1040NR is a valid return turns on the third requirement, whether petitioner made an honest and reasonable attempt to satisfy the requirements of the tax law.  At trial, petitioner admitted that at the time he submitted the Forms 1040NR, he knew this Court had held his arguments to be frivolous.  Petitioner, nevertheless, attempted to advance his frivolous tax protester arguments that he was not a U.S. citizen by purposefully filing a nonresident alien form. Petitioner is a well-educated, articulate, and knowledgeable

individual.  He intentionally chose to submit the Form 1040NR, rather than the Form 1040 that he knew was appropriate for his circumstances, to advance his protester position in an effort to deceive the Government.  Petitioner knew that the position he was taking in submitting the Forms 1040NR was frivolous.  Accordingly, we find that petitioner did not make an honest and reasonable attempt to comply with the requirements of the tax law.  The Forms 1040NR submitted by petitioner are not valid returns for purposes of section 6651.

Having found that petitioner did not file tax returns for 1990, 1991, and 1992, we must consider whether petitioner's failure to file was fraudulent within the meaning of section 6651(f).  In determining whether a taxpayer's failure to file is fraudulent, we consider the same elements that are considered in imposing the fraud penalty under section 6663.  Clayton v. Commissioner, 102 T.C. 632, 653 (1994).  Fraud is an intentional wrongdoing designed to evade tax known or believed to be owing. Edelson v. Commissioner, 829 F.2d 828, 833 (9th Cir. 1987), affg. T.C. Memo. 1986-223; Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601.  Respondent has the burden of proving fraud by clear and convincing evidence.  Sec. 7454(a); Rule 142(b); Clayton v. Commissioner, supra at 652-653.

The existence of fraud is a question of fact to be resolved upon consideration of the entire record.  DiLeo v. Commissioner,

96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Estate of Pittard v. Commissioner, 69 T.C. 391 (1977).  Fraud is never presumed and must be established by independent evidence that establishes fraudulent intent.  Edelson v. Commissioner, supra; Beaver v. Commissioner, 55 T.C. 85, 92 (1970).  Fraud may be proven by circumstantial evidence because direct evidence of the taxpayer's fraudulent intent is seldom available.  Spies v. United States, 317 U.S. 492 (1943); Rowlee v. Commissioner, 80 T.C. 1111 (1983); Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978).  The taxpayer's entire course of conduct may establish the requisite fraudulent intent.  Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969).

Courts have developed several indicia, or "badges", that tend to establish fraud.  They include:  (1) Understatement of income, (2) inadequate books and records, (3) failure to file tax returns, (4) implausible or inconsistent explanations of behavior, (5) concealment of assets, (6) failure to cooperate with tax authorities, (7) filing false Forms W-4, (8) failure to make estimated tax payments, (9) dealing in cash, (10) engaging in illegal activity, and (11) attempting to conceal illegal activity.  Douge v. Commissioner, 899 F.2d 164, 168 (2d Cir. 1990); Bradford v. Commissioner, supra at 307; Recklitis v.

Commissioner, 91 T.C. 874, 910 (1988).  This list is nonexclusive.  Miller v. Commissioner, 94 T.C. 316, 334 (1990).

During the years in issue, petitioner failed to file valid tax returns and failed to report substantial amounts of income from his veterinary practice.  Petitioner intentionally did not maintain records of his income or business expenses and intentionally discarded the minimal records that he received. The $65,000 amount, although stipulated in this case, cannot be shown to be the actual amount of income earned in petitioner's veterinary practice.  Moreover, petitioner did not cooperate with respondent during the administrative or judicial phases of this case.  Petitioner refused to meet with respondent's agent and responded to requests for meetings with tax protester rhetoric. Petitioner submitted numerous correspondence to respondent that attempted to advance his tax protester position and did not address the factual accuracy of respondent's determination. During testimony at trial, petitioner admitted that he was aware that the Tax Court has held the tax protester arguments to be frivolous.

Petitioner took affirmative steps to conceal his income and assets.  From 1987 until 1991, petitioner substantially avoided use of commercial banks for depositing income and paying expenses from his veterinary practice.  Petitioner dealt extensively in cash for payment of expenses and did not retain receipts of the

expenses. In addition, in 1987, petitioner transferred his interest in his primary residence to his wife for nominal consideration.

Petitioner argues that the transfer of the personal residence to petitioner's wife was not fraudulent as a matter of law. Petitioner contends that respondent could not have reached the property because he held the property with his wife as tenants by the entirety under the laws of the State of Arkansas prior to the transfer. Under Arkansas law, a judgment creditor of one spouse cannot force the partition and sale of property held by husband and wife as tenants by the entirety. Lowe v. Morrison, 289 Ark. 459, 460-461, 711 S.W.2d 833, 834 (1986). However, a debtor-spouse's interest in an entirety estate and entitlement to one-half the rents and profits from the property may be executed upon to satisfy a judgment against the debtor-spouse, subject to the nondebtor-spouse's right of survivorship. Morris v. Solesbee, 48 Ark. App. 123, 127, 892 S.W.2d 281, 283 (1995). Petitioner's transfer of the personal residence held as tenants by the entirety to his wife for nominal consideration can be fraudulent under Arkansas law. Under Arkansas law, a Federal tax lien filed to collect a spouse's separate tax liability is a lien against the spouse's interest in the entirety estate. Petitioner attempted to remove his residence from the reach of respondent by quitclaiming his interest in the entirety estate to

his wife. We find that the transfer of the personal residence to petitioner's wife is evidence of fraud.

Most of the badges of fraud that are relied on by the Court are present in this case. There is a pattern of failure to file personal income tax returns, concealment of assets and income, failure to cooperate with IRS agents, failure to keep records of income-producing activities, destruction of tax records, dealing in cash, and fraudulent transfer of assets. Respondent has proven by clear and convincing evidence that petitioner's failure to file returns for taxable years 1990, 1991, and 1992 was fraudulent.

Petitioner argues that he did not act fraudulently in submitting the Forms 1040NR (U.S. Nonresident Alien Income Tax Return) rather than a Form 1040 (U.S. Individual Tax Return) because he disclosed his income of $65,000 to respondent in the various documents that he submitted to the IRS. Petitioner argues that the documents state the amounts of income stipulated by the parties and refute that petitioner was concealing his income from respondent. We do not think that these documents preclude a finding of fraud in this case. Petitioner submitted these documents to the IRS only after he was notified of the IRS audit. Moreover, petitioner did not submit the second set of Forms 1040NR and documents entitled "Statement in Lieu of Return" until after the notice of deficiency was mailed to him.

We believe that petitioner submitted these documents primarily to advance his frivolous tax protester arguments rather than to report honestly and accurately his income to respondent. He purposefully did not keep records of his income and expenses with an intent to deceive the IRS. After the IRS began the audit, petitioner realized that his deceptive practices of not filing returns had been uncovered and that he was caught. Because he had failed to keep records of his income, petitioner had to guess at the amount of income he earned. He reported the same amount as his income for each of the years in issue. Because of petitioner's fraudulent failure to keep records, it was difficult to determine the actual amount of petitioner's income. Moreover, subsequent voluntary disclosure does not absolve a taxpayer of antecedent fraud. Badaracco v. Commissioner, 464 U.S. at 394; George M. Still, Inc. v. Commissioner, 19 T.C. 1072, 1077 (1953), affd. 218 F.2d 639 (2d Cir. 1955). Petitioner cannot rely on the Forms 1040NR and Statements in Lieu of Return as a shield from a fraud penalty, especially with the presence in this case of most of the enumerated badges of fraud. Accordingly, petitioner is liable for section 6651(f) additions to tax for 1990, 1991, and 1992.

Section 6654(a) imposes an addition to tax for failure to make timely estimated income tax payments. Where prepayments of tax do not equal the percentage of total liability required to be

paid as estimated tax, the addition is automatically imposed unless the taxpayer proves that a statutory exception applies. Sec. 6654; Habersham-Bey v. Commissioner, 78 T.C. 304, 319-320 (1982). Petitioner has not proven that an exception applies and is liable for the section 6654 addition to tax in each of the years in issue.

Respondent has moved that we impose a penalty on petitioner under section 6673. Section 6673(a)(1) authorizes the Court to require a taxpayer to pay the United States a penalty not exceeding $25,000 when the taxpayer institutes or maintains a proceeding primarily for delay or where the taxpayer's position is frivolous or groundless. Petitioner knew that this Court has held the tax protester arguments that he was asserting to be frivolous. Nevertheless, petitioner continually asserted the tax protester arguments in his petition and other pleadings, responses to respondent's discovery requests, requests for discovery from respondent, and testimony at trial. Petitioner did not cooperate with respondent during audit or the appeals conference.

We find that petitioner maintained frivolous positions with respect to his income tax liability and instituted and maintained this proceeding primarily for delay. Accordingly, we find that petitioner's conduct justifies that award of damages. In view of the number of years in issue and the amount of unreported income,

we award a penalty to the United States of $10,000 under the provisions of section 6673.

To reflect the foregoing and concessions by the parties,

<u>An appropriate order will be issued and a decision will be entered under Rule 155.</u>